## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DANIELLE SANDLIN, ET AL.                          CIVIL ACTION

VERSUS

DENIS URBINA, ET AL.                          NO. 19-00556-BAJ-RLB

## RULING AND ORDER

Before the Court are Plaintiffs' *Daubert* Motion To Exclude And/Or Limit Testimony And Evidence From Defendants' Expert, Eric Burson (Doc. 62) and Defendants' *Daubert* Challenge Seeking to Exclude the Testimony of James Pittman (Doc. 64). The Motions are opposed. (Doc. 67; Doc. 68). For the reasons stated herein, Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART** and Defendants' Motion is **DENIED.**

## I.  FACTS

This case arises out of a motor vehicle accident in Livingston Parish, Louisiana. (Doc. 37-3, ¶ 1; Doc. 42-4, ¶ 1). The collision occurred between Plaintiff Danielle Sandlin's vehicle and Defendant Denis Urbina's vehicle. (*Id.*). Plaintiff Danielle Sandlin filed suit on behalf of herself and, along with Plaintiff James W. Sandlin, Jr., on behalf of their minor child. (Doc. 1-1, ¶ 12).

Plaintiffs allege negligence claims against Urbina, the employee-driver of the vehicle involved in the collision. (*Id.* at ¶ 2). Plaintiffs also seek to hold Benitez vicariously liable for Urbina's negligence under the doctrine of *respondeat superior*.

1

(*Id.* at ¶ 6). Finally, Plaintiffs allege that Defendant Prime Insurance Company insured Urbina and Benitez at the time of the collision. (*Id.* at ¶ 10).

## II.    PROCEDURAL HISTORY

Plaintiffs filed suit in the 21st Judicial District Court for the Parish of Livingston on July 22, 2019. (Doc. 1-1). Thereafter, Defendants removed this case to the Court based on diversity jurisdiction, 28 U.S.C. § 1332. (Doc. 1). Where jurisdiction is founded on diversity, federal courts must apply the substantive law of the forum state. *Meadors v. D'Agostino*, No. CV 18-01007-BAJ-EWD, 2020 WL 1529367, at *3 (M.D. La. Mar. 30, 2020) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Defendants previously moved for partial summary judgment, arguing that Benitez could not be liable for its own direct negligence and vicariously liable for Urbina's negligence. (Doc. 37). The Court granted Defendants' motion and dismissed Plaintiffs' direct negligence claims against Benitez. (Doc. 69). Plaintiffs' vicarious liability claims against Benitez remain.

Both parties now seek the exclusion of the opposing party's expert. (Doc. 62; Doc. 64).

## III.    LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which require the Court to serve as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role

extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

Under Rule 702, the Court must consider three primary requirements in determining the admissibility of expert testimony: (1) qualifications of the expert witness; (2) relevance of the testimony; and (3) reliability of the principles and methodology upon which the testimony is based. *Fayard v. Tire Kingdom, Inc.*, No. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010). In *Daubert*, the United States Supreme Court listed factors to consider when determining reliability of expert methodology, to include "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (internal alterations omitted; quoting *Daubert*, 509 U.S. at 593–594).

This list is merely illustrative, however, and the Supreme Court has also emphasized that "the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire*, 526 U.S. at 150). "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152).

Notably, *Daubert* motions are *not* appropriate when they attack "the underlying facts upon which [an expert's] opinion was based. That approach is not contemplated under a *Daubert* challenge." *In re Katrina Canal Breaches Consol. Litig.*, No. 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012). Rather, the reliability of data underlying an expert's opinion goes to the weight of the evidence, and is subject to cross-examination, but should not serve as basis for its exclusion. *See Tyler v. Union Oil Co. of Ca.*, 304 F.3d 379, 393 (5th Cir. 2002) ("Unocal instead attempts to show that the underlying data—provided by Unocal—was itself unreliable. This is an issue that Unocal could—and did—raise in cross-examination."); *In re Katrina Canal Breaches*, 2012 WL 4328354, at *1 ("Courts should not be lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility."). The validity or correctness of an expert's conclusions are issues for the jury to determine *after* the *Daubert* analysis. *See Pipitone*, 288 F.3d at 250 ("The fact-finder is entitled to hear Dr. Coco's testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which Dr. Coco relied are accurate.").

Ultimately, the Court has broad discretion in deciding whether to admit expert opinion testimony. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). "Notwithstanding *Daubert*, the Court remains cognizant that 'the

4

rejection of expert testimony is the exception and not the rule.'" *Barnett v. Nat'l Cont'l Ins. Co.,* No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *3 (M.D. La. Jan. 8, 2019) (quoting *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011)).

With these principles in mind, the Court turns to the parties' *Daubert* challenges.

## IV.  DISCUSSION

Plaintiffs move to exclude or limit the testimony of Eric Burson, Defendants' accident reconstruction expert. (Doc. 62, p. 1). Likewise, Defendants move to exclude or limit the testimony of James Pittman, Plaintiffs' accident reconstruction expert. (Doc. 64). The Court will address each Motion in turn, beginning with Plaintiffs' Motion.

### A. Plaintiffs' *Daubert* Motion to Exclude Defense Expert Eric Burson

Plaintiffs challenge both Burson's qualifications and the reliability of his principles and methodology because of his alleged failure to consider certain underlying facts and data. (Doc. 62). For the reasons stated herein, Plaintiffs' Motion is granted in part and denied in part.

### i.  Qualifications

Plaintiffs do not dispute Burson's qualification to testify as an accident reconstruction expert. (*See generally* Doc. 62). Rather, Plaintiffs contend that Burson is unqualified to testify in the fields of biomechanical engineering, biomedical engineering, or medicine. (*Id.* at p. 2). Defendants agree. (Doc. 68, p. 7–8).

Defendants assert that they "will not offer [] Burson as an expert in biomechanics or ask him to render an opinion as to medical causation." (*Id.* at p. 7–8). Based on the parties' agreement, the Court will not permit Burson to testify in the fields of biomechanical engineering, biomedical engineering, or medicine.

More specifically, Plaintiffs seek exclusion of the following statements contained in Burson's expert report, arguing that they are a "backdoor attempt" to provide medical causation testimony:

> Because the Freightliner was at a near stop, the contact between the two vehicles would have resulted in a little to no delta-V, resulting in little to no g-forces imparted onto the BMW 750's occupants. It is more likely than not that occupants of the BMW 750 would have been subjected to shaking or rocking on the suspension.
>
> Research conducted in this type of collision indicates that the vehicle and occupants sustain minor forces and accelerations (Tanner & Rodowicz). The resulting contact between the two would have been very minor with a longer duration of contact. Therefore, based upon the research, the occupants of the BMW 750 would have been subjected to minor forces and accelerations.

(Doc. 62-1, p. 9; Doc. 62, p. 3).

Defendants respond that Burson is well qualified to calculate the change in velocity and the corresponding forces exerted at impact, and that other qualified medical experts will use Burson's finding in rending their own medical causation opinion. (Doc. 68, p. 8). Indeed, as Defendants point out, the Court previously held that "it is a routine part of the work of an accident reconstruction expert to calculate speeds of vehicles and forces upon impact and to use physics in the calculations and analysis of same." *Byrd v. Allstate Prop. & Cas. Ins. Co.*, No. CV 16-563-JWD-EWD,

2018 WL 4693812, at *4 (M.D. La. Oct. 1, 2018). Accordingly, the Court will permit Burson to testify regarding the forces exerted upon impact.

Plaintiffs' Motion is granted in part and Burson's testimony is limited as follows: Burson may not testify in the fields of biomechanical engineering, biomedical engineering, or medicine, including medical causation.

### ii.    Underlying Facts and Data

Next, Plaintiffs argue that Burson's opinions are not based on sufficient facts and data because he disregarded a video showing the final location of Defendant Urbina's truck and trailer at the scene of the collision after the collision occurred. The Court has held, however, that the reliability of data underlying an expert's opinion goes to the weight of the evidence, and is subject to cross-examination, but should not serve as basis for its exclusion. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 393 (5th Cir. 2002) ("Unocal instead attempts to show that the underlying data—provided by Unocal—was itself unreliable. This is an issue that Unocal could—and did—in cross-examination."); *see also In re Katrina Canal Breaches Consol. Litig.*, No. 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012) (*Daubert* motions are *not* appropriate when they attack "the underlying facts upon which [an expert's] opinion was based. That approach is not contemplated under a *Daubert* challenge.").

Plaintiffs' objection to Burson's "facts [and] data" primarily goes to the weight of Burson's testimony but does not serve as a basis for exclusion. *See Stewart v. Quality Carriers, Inc.*, No. CV 19-00606-BAJ-SDJ, 2021 WL 2708924, at *3

(M.D. La. June 30, 2021) ("Accordingly, Plaintiff's objection to Smith's 'facts [and] data' primarily goes to the weight of Smith's testimony but does not serve as a basis for exclusion."). Accordingly, Plaintiffs' Motion is denied in all other respects.

## B. Defendants' *Daubert* Motion to Exclude Plaintiffs' Expert James Pittman

Defendants challenge Pittman's qualifications and methodology. (Doc. 64). For the reasons stated herein, Defendants' Motion is denied.

### i.    Qualifications

Defendants argue that Pittman lacks the education, training, and expertise necessary to render an opinion in this matter. (Doc. 64-1, p. 6). Specifically, Defendants contend that Pittman does not have a college degree and has not authored articles related to accident reconstruction. (*Id.* at p. 4). Defendants assert that Pittman is employed full-time as a Baton Rouge Police Department officer and that his work as an accident reconstructionist is only part-time. (*Id.*).

Plaintiffs respond that Defendants' own expert, Burson, testified that Pittman was qualified to give an opinion as an accident reconstructionist. (Doc. 67, p. 2). Plaintiffs also point to Pittman's Curriculum Vitae, which reflects that he has been a police officer for over 20 years, worked in the traffic homicide unit since 2001, and is currently the supervisor for both the traffic homicide and hit and run divisions of the department, where his duties include reconstructing accidents. (*Id.* at p. 3).

Plaintiffs contend that Pittman has completed over 600 hours of coursework in the field of accident reconstruction, accident investigation, and related topics. (*Id.*). Plaintiffs assert that Pittman completed 400 hours of coursework through the

8

Northwestern University Traffic Institute and 120 hours of coursework through the Institute for Police Technology and Management. (*Id.* at p. 4). Plaintiffs argue that Pittman was a crash investigation instructor for the Baton Rouge Fire Department and has trained over 200 agencies, including police departments and private firms, on how to use software in connection with accident reconstruction. (*Id.*). Plaintiffs also contend that Pittman has been accepted as an accident construction expert on fourteen prior occasions. (*Id.*). Indeed, Pittman's Curriculum Vitae reflects that he has testified in cases in the U.S. District Court for the Eastern District of Louisiana and the Nineteenth, Twenty-Second, and Thirty-Third Judicial District Courts. (Doc. 67-1, p. 2).

Defendants offer no compelling basis for the Court to conclude that Pittman is unqualified. The Court finds Pittman to be sufficiently qualified to testify as an accident reconstruction expert in this matter. Defendants' Motion is denied in this respect.

### ii.   Methodology

Defendants argue that Pittman did not use proper accident reconstruction standards, but rendered his opinion solely based on hindsight and speculation. (Doc. 64-1, p. 5). Plaintiffs respond that Pittman used standard and reliable methodology in the field of accident reconstruction to analyze the crash at issue. (Doc. 67, p. 5).

Plaintiffs argue that in reaching his conclusions, Pittman reviewed photographs of the vehicles taken at the scene of the collision, Google satellite

imagery, the crash report, and the deposition testimony of both the drivers and the police officer who investigated the collision. (*Id.*). Pittman also inspected the scene of the collision, where he took additional photographs of the collision site.

The Court previously held that an accident reconstruction expert's methodology was "reliable enough for the purpose of admissibility" when the expert's methodology consisted of an inspection of the site and taking numerous photographs for review. *Young v. Am. Eagle Lines,* No. CV 05-1079-JVP-SCR, 2007 WL 9710791, at *2 (M.D. La. Feb. 14, 2007). There, the proposed expert "detailed his observations and explained that his opinions were based upon his personal inspection and photographs taken of the trailer, his experience in accident reconstruction, his education as a mechanical engineer, and his personal knowledge of the trailer's construction." *Id.* Additionally, the expert "conducted a visual inspection of the trailer and reviewed photographs of it." *Id.* The Court found that the proposed expert's "failure to conduct specific testing, perform calculations, and/or review additional materials are factors for the jury to consider when weighing the evidence." *Id.* at *3.

The Court recently reached a similar conclusion in *Stewart v. Quality Carriers, Inc.,* finding an expert's methodology "sufficient for the purpose of admissibility" when the expert conducted a personal inspection of the collision scene, reviewed reports, photographs, measurements, diagrams, event data recorder downloads of each vehicle, and deposition testimony. No. CV 19-00606-BAJ-SDJ, 2021 WL 2708924, at *6 (M.D. La. June 30, 2021) (citing *Graham v. Hamilton,* 872 F. Supp. 2d 529, 538 (W.D. La. 2012) (expert's methodology reliable when he detailed

the impacts that the plaintiff's car sustained based on a review of the police reports, eyewitness accounts, and photographs of the accident scene, and then used his expertise to estimate the vehicle's likely change in speed as a result of the collision); *see also Burgo v. Davis*, No. 15-2430, 2016 WL 3257589, at *1, 4 (E.D. La. June 14, 2016) (accident reconstruction expert's opinion reliable when he relied upon photographic evidence of the accident, but did not personally inspect the vehicles); *see also Thomas v. Chambers*, No. CV 18-4373, 2019 WL 1670745, at *4 (E.D. La. Apr. 17, 2019) ("Conflicts among the experts' opinions must be resolved by the jury.").

The Court finds this case to be analogous. Pittman's methodology is sufficient for the purpose of admissibility. It bears reminding that "the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)). Rather, as *Daubert* makes clear, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Thus, while exercising its role as a gate keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits. *Id.*

Accordingly, Defendants' Motion is denied.

V.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiffs' *Daubert* Motion To Exclude And/Or Limit Testimony And Evidence From Defendants' Expert, Eric Burson (Doc. 62) is **GRANTED IN PART** and **DENIED IN PART.** Burson's testimony is limited as follows: Burson may not testify in the fields of biomechanical engineering, biomedical engineering, or medicine, including medical causation. Plaintiffs' Motion is denied in all other respects.

**IT IS FURTHER ORDERED** that and Defendants' *Daubert* Challenge Seeking to Exclude the Testimony of James Pittman (Doc. 64) is **DENIED.**

Baton Rouge, Louisiana, this 4th day of March, 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**